**THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:18CR127 |
| | § | |
| BHAVESH PATEL, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendant Bhavesh Patel's ("Defendant") Motion to Transfer (the "Motion") (Dkt. 16), the matter having been referred to the undersigned by the Honorable Amos L. Mazzant (*see* Dkt. 26). The Government filed a response in opposition (Dkt. 20), and Defendant filed a reply (Dkt. 23). On November 2, 2018, the Court conducted a hearing on the Motion. Angelo Calfo ("Mr. Calfo") appeared for Defendant, and Camelia Lopez ("Ms. Lopez") appeared for the Government.

Having considered the Motion and the responses thereto, and the arguments of counsel at the hearing, the Court recommends the Motion (Dkt. 16) be **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Defendant is a former information technology contractor for Catholic Health Initiative ("CHI"), a Colorado-based, national not-for-profit healthcare system. The Government alleges that on August 16, 2013, Defendant launched a cyber-attack on CHI's computer server located in Richardson, Texas, in the Eastern District of Texas, *See* Dkt. 20. The server used a proprietary electronic medical records system ("EMR") called "Epic" to manage CHI's patient data, medical histories, and prescription information on the server in Richardson. *Id.*

The Government alleges that after Defendant resigned from his position with CHI, he failed to return his CHI-issued laptop computer, and then from his home in Sioux Falls, South Dakota, used that laptop to access CHI's server in Richardson using another former CHI contractor's login credentials. *Id.* According to the Government, Defendant manipulated the programming script on the CHI server, and as a result, the server attempted to overwrite an entire day's worth of EMR, which caused CHI's EMR system to crash and become inoperable for about thirty minutes. *Id.* The Government alleges that in attempting to cover up his actions, Defendant damaged the server in other ways. The effects of the network outage were felt throughout CHI's computer network, including at computer terminals in medical facilities in Washington State, and the server in Texas. *Id.*

Defendant was initially charged in the Western District of Washington on May 9, 2018, by way of a complaint alleging one count of Intentional Damage to a Protected Computer Without Authorization, in violation of 18 U.S.C. §§ 1030(a)(5)(A) and (c)(4)(B)(i)(I), (II), (IV) and (VI), and (ii). *See United States v. Patel*, Case No. 3:18-CR-5264-BHS (WDWA) (the "Washington Case"), Dkt. 1. On May 30, 2018, a grand jury returned an indictment with the same charge. *See* Washington Case, Dkt. 10. At some point thereafter, the Government questioned the propriety of venue in the Western District of Washington given that Defendant's interference with CHI's EMR system actually occurred on the server in Richardson, Texas, in the Eastern District of Texas, as opposed to the Western District of Washington, where the effects of the ensuing crash were largely felt. *See* Washington Case, Dkt. 37. Additionally, the Government contemplated adding an additional charge, Aggravated Identity Theft in violation of 18 U.S.C. § 1028(a). *See id.*

Subsequently, on August 13, 2018, the Government obtained a superseding indictment containing both charges against Defendant in the Eastern District of Texas. *See* Dkt. 1.

Approximately two weeks later, on August 30, 2018, United States District Judge Benjamin H. Settle granted the Government's Motion for Leave to Dismiss Indictment Pursuant to Federal Rule of Criminal Procedure 48(a). *See* Washington Case, Dkt. 40 (the "Order Granting Leave to Dismiss Indictment"). At the time of the dismissal of the indictment, the charge against Defendant had been pending less than four months, and the trial was ten months away. *Id*. Noting that Defendant had failed to submit evidence of bad faith on the part of the Government and had also consented to the Government's motion to dismiss the indictment, Judge Settle granted the motion and the indictment was dismissed. *Id*.

The primary thrust of Defendant's argument appears to be that the case should be transferred to the Western District of Washington because that is where the predicate offense of Intentional Damage to a Protected Computer was originally charged and where most of the damage to CHI's computers was felt. Defendant also argues that the impact of trying the case in the Eastern District of Texas would be "unnecessarily burdensome, inconvenient, and costly" to him. Dkt. 16 at 2.

## II.  LEGAL STANDARD

Rule 21(b) of the Federal Rules of Criminal Procedure states that "for the convenience of the parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to that defendant or any one or more of the counts thereof to another district." FED. R. CRIM. P. 21(b). The application of Rule 21(b) is a matter of discretion for the trial court. *See United States v. Fagan*, 821 F.2d 1002, 1008 (5th Cir. 1987); *United States v. Walker*, 559 F.2d 365, 372 (5th Cir. 1977); *United States v. Boyer*, 2008 WL 4104482, at *1 (S.D. Miss. 2008). In *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240, 243-44 (1964), the United States Supreme Court identified the following factors for a court to consider when ruling on a Rule 21(b)

motion: (1) residence of an individual defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer. *See also United States v. Morris*, 176 F. Supp. 2d 668, 671-72 (N.D. Tex. 2001). The burden is on the defendant to show that transfer would serve the purpose of the rule but the defendant need not show "truly compelling circumstances." *United States v. Coffee*, 113 F. Supp. 2d 751, 753 (E.D. Pa. 2000).

## III. <u>ANALYSIS</u>

With respect to the *Platt* factors, the Court finds the factors are either neutral or weigh against transfer. First, the location of Defendant's residence in Sioux Falls, South Dakota, is a neutral factor. Defendant admits that "neither of the potential venues is convenient" for him. *See* Dkt. 16 at 5. Second, Defendant failed to rebut the Government's contention that any cost difference between flights to the Seattle-Tacoma airport ("Sea-Tac") compared to flights to Dallas-Forth Worth Airport ("DFW") is minimal, as is the travel distance between Sea-Tac and the Tacoma courthouse compared to the travel distance between DFW and the Sherman courthouse. Furthermore, the Government contends these minimal differences are likely offset by other cost factors, such as less expensive meals and lodging in Sherman. Thus, the Court finds this factor is neutral.

Because Defendant works from his home, the Court finds any potential disruption to Defendant's business is likewise neutral, particularly in light of the fact that the trial in this case is expected to last only two to three days. *See* Dkt. 20 at 14. Additionally, as discussed above, any

differences in relative accessibility between the Sherman courthouse and the Tacoma courthouse are minimal.  Thus, this factor is neutral. The docket condition of each district is also neutral. While the case was pending in Washington, Defendant waived any objection under the Speedy Trial Act and moved to set the case for trial in June 2019. *See* Dkt. 20 at 18. The trial in the present case has been set for June 24, 2019. *See* Dkt. 28.

As to the location of documents, Defendant has received all of the pertinent discovery in this case electronically. *See* Dkt. 20 at 13. "As other courts have acknowledged, this factor is of no significant or relevance in cases involving electronically-stored documents that can be easily transferred or made available in any location. *United States v. Hassanshahi*, 2105 WL 7307079 (D.D.C. 2015); *see also United States v. Bowdoin*, 770 F. Supp. 2d. 138-39 (D.D.C. 2011) ("the location of documents is also irrelevant since all documents are available in either location"); *United States v. Quinn,* 401 F. Supp. 2d 80, 87 (D.D.C. 2005) ("In light of the availability of electronic storage and transfer of documents relevant to this matter, which the parties acknowledge, this factor is of no significance to the analysis."). Thus, this factor is neutral.

With respect to the location of events, while Defendant's Motion focuses only on the collateral damage that occurred in Washington, the Government argues that Defendant specifically intended to manipulate the computer server in Texas and did not necessarily intend to have any impact on the computer work stations in Washington. *See* Dkt. 20 at 12. The Government also argues that evidence of Defendant's criminal conduct is located on the server in Texas, not on the work stations in Washington that were affected by the server outage. Thus, the Court is of the opinion this factor weighs against transfer.

The location of the witnesses also weighs against transfer. "Under Rule 21(b), the district court is to consider the convenience of the witnesses as well as the convenience of the parties."

*United States v. Pry*, 625 F.2d 689, 691 (5th Cir. 1980); *see also Morris*, 176 F. Supp. 2d at 671. Generally, a defendant is required to give "specific examples of witnesses' testimony and their inability to testify because of the location of the trial." *United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 456 (S.D.N.Y. 1997). "The court must rely on 'concrete demonstrations' of the proposed testimony." *United States v. Haley*, 504 F. Supp. 1124, 1126 (E.D. Pa. 1981). Defendant's Motion recites a list of forty potential witnesses, eighteen of which he says are likely to be "key witnesses." Dkt. 16 at 5. The Government responds that it expects that only "a handful" of the witnesses identified by Defendant will actually testify. *See* Dkt. 20 at 10. According to the Government, the most significant of the witnesses expected to testify are Gregory Braunton ("Braunton"),[1] CHI's Director of Threat Management, Incident Response and Forensics, and Uday Gudimalla ("Gudimalla"), a former CHI contractor who the Government alleges Defendant contacted for advice about how to manipulate files on the server to cover up his actions. *See id*. According to the Government, Braunton has requested that the case be prosecuted in the Eastern District of Texas, and Gudimalla resides in the district. *Id*. The Government also argues that it may call as witnesses CHI employees Kurt Kettleson ("Kettleson"), Cathi Bishop ("Bishop"), and Patrick Malone ("Malone"),[2] all of whom the Government argues oppose the transfer of this case to the Western District of Washington.

Defendant counters that the Government fails to acknowledge other CHI employees and consultants who are potential witnesses, as well as Defendant's potential character witnesses, some of whom are located in Tacoma or elsewhere on the West Coast. *See* Dkt. 23 at 3-4. Defendant

---

[1] The Government avers that it expects Braunton's testimony to consume nearly half of the Government's case-in-chief. *See* Dkt. 20 at 10.

[2] Kettleson responded to the attack on the server and collected evidence during CHI's investigation of the incident. Malone and Bishop supervised Defendant while he was employed at CHI and have knowledge of the circumstances surrounding Defendant's departure from the company. *Id*. at 11.

fails to explain, as required, what those witnesses would say if called to testify at trial. *See United States v. Noland*, 495 F.2d 529, 534 (5th Cir. 1974) (Although defendant alleged out-of-state witnesses would be inconvenienced by a trial in Texas, he "failed to demonstrate facts from which the [Court] could have concluded that the convenience of the witnesses and the interest of justice required transfer."). It appears to the Court that many of the likely witnesses in this case would be required to travel no matter where the trial is held, and as previously discussed, the Court is not persuaded that the difference in overall travel expense and inconvenience between the two districts is significant. Accordingly, this factor weighs in favor of retaining the case in the Eastern District of Texas.

Defendant's arguments regarding location of counsel and expense to the parties are intertwined. Defendant asserts that the location of counsel should weigh in his favor because his counsel are based in Seattle, Washington, and Defendant was only recently indicted in the Eastern District of Texas. *See* Dkt. 16 at 10. Seattle is a forty-minute drive to the Tacoma courthouse, compared to a four-hour flight to Dallas. Thus, Defendant argues, the cost to fund travel and accommodations for his lawyers, as well as the cost of hiring local counsel, would likely be financially devastating to Defendant. *See id.*; *see also* Dkt. 30 at 5-6. The Government asserts that apart from inconvenience and expense, Defendant does not contend that trying the case in Texas will hamper his defense in any way. *See* Dkt. 20 at 15. The Government further argues that beyond the added expense to Defendant of a trial in Texas, the Court should consider the impact of moving the trial with respect to expense to the victims and the witnesses, all of whom prefer the case remain in Texas as discussed above. With respect to costs of housing and transport for any witnesses Defendant decides to call, the Court has already determined that any difference in the cost of trial in the two locations is minimal. Neither side, therefore, presents compelling arguments

as to the weight that should be assigned to location of counsel and expense to the parties, and hence these factors are neutral in the Court's transfer analysis.

As to the final factor, other special elements, Defendant argues the Court should transfer this case back to the Western District of Washington, where the Government's investigation originated, "where the predicate offense of Intentional Damage to a Protected Computer was originally charged, where litigation has been under way since May of 2018, and where the effects of Defendant's alleged tampering were felt." Dkt. 16 at 2. The Government, on the other hand, contends there is no place to transfer the case *back to* because *this case* originated here. Dkt. 30 at 36. Defendant posits that the Government arbitrarily changed the case to reference the server in Texas, rather than the work stations in Washington because "they wanted to bring the case here for some reason." *Id*. at 34. According to Defendant, the Government "all of a sudden decide[d] to [] change forums" when it knew from the beginning that the server allegedly attacked was in Texas. Dkt. 30 at 33. The Government contends, however, that there are two *separate* cases. Regardless of the fact that the investigation originated in Washington, the indictment in *this case* originated in *this district* because it alleges intentional damage to a computer server in *this district*. Dkt. 30 at 36. *Id*. Thus, according to the Government, the crime as charged in the Eastern District of Texas could not have been brought in the Western District of Washington. *Id.* The Court thus finds this factor should bear no weight in the analysis.

In sum, of the ten *Platt* factors, eight are neutral and two weigh against transfer. Accordingly, the Court concludes that convenience and the interests of justice are best served by denying the motion and maintaining venue in the Eastern District of Texas.

8

## IV. <u>CONCLUSION AND RECOMMENDATION</u>

Based on the foregoing, the Court recommends that Defendant Bhavesh Patel's Motion to Transfer (Dkt. 16) be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C.A. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 14th day of November, 2018.**

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE